## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## AT OWENSBORO

| | |
|---|---|
| **CYNTHIA GAY BORUM, as Administratrix of the Estate of Nicole Alyce Borum** ) ) ) ) | |
| **PLAINTIFF** ) ) | |
| v. ) ) | CASE NO.: 4:17-cv–00017-JHM-HBB |
| **JUNG WOOK KANG SMITH, MD., DEACONESS CLINIC, INC., DEACONESS HOSPITAL, INC. DEACONESS HEALTH SYSTEM, INC.** ) ) ) ) ) | |
| **DEFENDANTS** ) | |

---

### DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS FOR NEGLIGENT HIRING, TRAINING, RETENTION, AND SUPERVISION

---

Deaconess Clinic, Inc; Deaconess Hospitals, Inc.; and Deaconess Health System, Inc. (collectively "Deaconess Defendants"), by counsel, move this Court for partial summary judgment on Plaintiff's claim for punitive damages. As grounds for this Motion, these Defendants state:

**I.   INTRODUCTION**

This is a medical negligence case that arises out of the care and treatment provided to Nicole Borum following her suicide attempt in the summer of 2015. Plaintiff alleges that Ms. Borum – who had just attempted suicide several days before establishing care with the Defendants – would not have attempted it again and succeeded but for the Defendants' negligence in treating her anxiety and depression.

Among Plaintiff's claims is that Deaconess Clinic, Inc., Deaconess Hospital, Inc., and Deaconess Health System, Inc. "breached their duties to Nicole Alyce Borum by negligently

hiring, training, supervising and/or retaining their agents, employees, representatives and/or ostensible agents[.]" (Complaint ¶¶ 16.) However, Plaintiff has presented no qualified expert testimony on these claims as required by Kentucky law and the Federal Rules of Evidence. Therefore, Plaintiff's claims for negligent hiring, training, retention, and supervision must be dismissed.

## II.   STATEMENT OF UNDISPUTED FACTS

### a. Factual history

The factual history of this case is laid out fully in the Defendants' Motion for Summary Judgment on the basis of Plaintiff's failure to prove causation and in the Defendants' Motion for Partial Summary Judgment on Plaintiff's claim for punitive damages. The Defendants incorporate the statement of facts in those Motions and exhibits attached to them.

### b. Procedural history

On January 12, 2017, Cynthia Borum filed this wrongful death action against the Defendants: Dr. Smith and her employer, Deaconess Clinic, Inc.; Ms. Powell and her employer, Deaconess Hospital, Inc.; and Deaconess Health System, Inc., which owns and contributes resources to the operations of Deaconess Hospital and Deaconess Clinic. Among Plaintiff's claims is that Deaconess Clinic, Inc., Deaconess Hospital, Inc., and Deaconess Health System, Inc. "breached their duties to Nicole Alyce Borum by negligently hiring, training, supervising and/or retaining their agents, employees, representatives and/or ostensible agents[.]" (Complaint ¶¶ 16.)

Plaintiff disclosed two liability experts: psychiatrist Dr. Robert Goldstein and family medicine physician Dr. Finley Brown. Dr. Goldstein expressed no criticisms of Deaconess Clinic, Deaconess Hospital, or Deaconess Health System. (See Goldstein disclosure, attached as Exhibit A.) Dr. Brown expressed the following criticisms of the corporate Defendants:

> Deaconess Cross Pointe[1] and Deaconess Clinic deviated from the standard of care in failing to have a system in place to track and monitor patients who were at a moderate to high risk of suicide and ensure that they received adequate care and treatment from individuals skilled in treating suicide risk.
> Had Deaconess Cross Pointe and Deaconess Clinic complied with the standard of care, it is more likely than not Ms. Borum would not have committed suicide. [These breaches] were, in my view, a substantial factor in Ms. Borum's death.

(Brown disclosure, pp.2-3, attached as Exhibit B.) At best, this can be read as a criticism of Deaconess' training and supervision of Dr. Smith and/or Ms. Powell; Dr. Brown did not express any criticisms of Deaconess's hiring or retention of Syrrus Powell or of Dr. Smith.

Dr. Brown has been in solo practice since 1985. (Brown depo. 44:18-21, attached as Exhibit C.) Dr. Brown's psychiatric education is entirely from medical school and CMEs, though he could not recall the last CME he took related to psychiatry or mental health. (Brown depo pp. 13-14.)

In deposition, Dr. Brown testified regarding his utter lack of qualifications to offer criticisms against the Deaconess Defendants:

> Q. Have you ever had responsibility for drafting policies and procedures for any hospital?
>
> A: …At St. Joe's when I first got on staff, I was advising administration on physician recruitment. So I think I had some input on policies to see if they could get more doctors and maybe more patients to the hospital.
>
> Q. Okay. How about policies and procedures for clinical practice?
>
> A. No, I don't think I have ever done that.
>
> Q. Okay. Have you ever been employed by or affiliated with a health system that has outpatient primary care offices?
>
> A. No, I have never … wanted to. … I think most of the guys that are in solo or a small group practice wouldn't enjoy being in a big institution.

---

[1] Deaconess Cross Pointe is the outpatient hospital at which Nicole attended counseling with Syrrus Powell and part of Deaconess Hospitals, Inc. Dr. Brown's criticisms of Cross Pointe are thus criticisms of Deaconess Hospitals.

> Q. Have you ever advised a health care system regarding patient safety policies and practices?
>
> A. No. I don't think anybody needs me to advise them on that….
>
> Q. Okay. … You have never served in that role?
>
> A. I have not.
>
> Q. For any health system?
>
> A. That's true.
>
> Q. Have you ever advised or consulted with a health care system regarding implementation of electronic medical records?
>
> A. No.
>
> Q. Do you use electronic medical records?
>
> A. I don't. Actually I don't believe in [them]. In electronic medical records for a solo practicing physician makes no practical sense, economic sense. For big groups, part of the systems, I think it works.
>
> Q. Okay. So you use paper and pen?
>
> A. Yes[.]
>
> Q. Have you ever worked in any type of administrative capacity related to the implementation of systems for monitoring and tracking patients within a health care system?
>
> A. I have never been asked to do that, no.

(Brown depo. 40:11 – 43:12.)

Dr. Brown's own method of "monitoring and tracking patients at risk for suicide," to the extent it can be considered a "method," is rudimentary:

> Q. Do you have a policy or procedure in place for monitoring and tracking patients who are at risk for suicide?
>
> A: [M]y procedure is that if I have got a sick patient, somebody who is not stable, somebody who potential their life is at risk, I write my note, and I put the file on my desk. And it never leaves my desk until the problem is resolved one way or another. So in a way I do, yes.
>
> Q. Okay. So that's your practice?

4

    A.    That's the way I do it. Of course I don't have the sophisticated software. I mean, I have [computers], but I write my notes on paper. I have little stickies that I put on the outside with the problem.

          If it's somebody that I need to talk to that night, I will have their … phone number on a piece of paper, and I put it in my pocket. I always look in my pocket to see what piece of paper I have got, what duty I have to do. It works pretty well.

(Brown depo. 67:12 – 68:10.)

In short, the only expert disclosed to criticize the Deaconess Defendants has never been in a position to influence the clinical policies or practices of any healthcare facility and whose own practice monitoring patients at risk for suicide consists of putting sticky notes on their file and their phone numbers in his pocket.

## III. ARGUMENT

The Deaconess Defendants are entitled to summary judgment in their favor on Plaintiff's claims for negligent hiring, training, retention, and supervision because Plaintiff has presented no qualified expert testimony on these claims under Kentucky law and as required by the Federal Rules of Evidence.[2]

### a. No expert has criticized the hiring or retention of any individual.

In a Kentucky medical negligence action, the burden of proof is on the plaintiff to prove that the physician committed negligence, and that this negligence was the proximate cause of her injury. *Andrew v. Begley*, 203 S.W.3d 165, 179 (Ky. App. 2006). A plaintiff must present medical expert testimony that establishes 1) the standard of skill expected of a reasonably competent medical practitioner or entity; and 2) that the negligence proximately caused the injury. *Id*. To

---

[2] To be clear, no Defendant argues that Dr. Brown is not qualified to render opinions against the individually-named Defendants in this case. Dr. Brown's qualifications to render any of these opinions is the subject of a contemporaneously filed *Daubert* Motion. The subject of this Motion is solely the negligent hiring, training, retention, and supervision claims against the Deaconess Defendants.

bring their negligent hiring and retention claims to a jury, Plaintiff must produce expert testimony to establish that the Deaconess Defendants fell below the standard of care of reasonably competent healthcare organizations in their hiring and retention of Syrrus Powell and Dr. Smith *and* that such conduct proximately caused Ms. Borum's death. *Reams v. Stutler*, 642 S.W.2d 586, 588 (Ky. 1982).

Here, no expert has been disclosed to testify or testified that the hiring or retention of Dr. Smith or Ms. Powell fell below the standard of care of a reasonably competent healthcare organization under like or similar circumstances. Therefore, Plaintiff's negligent hiring and retention claims fail as a matter of Kentucky law.

### b. Dr. Brown is not qualified to criticize the Deaconess Defendants' training or supervision of its employed healthcare providers.

Dr. Brown does offer criticisms of the Deaconess Defendants, but he is not qualified to do so under federal law. Plaintiff would have this Court hold that Dr. Brown is qualified to testify against the Deaconess Defendants simply by virtue of being a physician, but such a holding would be improper under the Federal Rules of Evidence.

FRE 702 states: "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case."

"The key issue in deciding expertise is whether the expert has sufficient experience regarding the opinion to which he will testify." *Bush v. Michelin Tire Corp.*, 963 F. Supp. 1436,

1442 (W.D. Ky. 1996). "The fact that a proposed witness is an expert in one area, does not ipso facto qualify him to testify as an expert in all related areas." *Shreve v. Sears, Roebuck & Co.*, 166 F. Supp. 2d 378, 391 (D. Md. 2001) (citing *Oglesby v. General Motors Corp.*, 190 F.3d 244 (4th Cir. 1999); *Wilson v. Woods*, 163 F.3d 935, 938 (5th Cir.1999); and *Ancho v. Pentek Corp.*, 157 F.3d 512, 517 (7th Cir.1998)). In *Shreve*, the Court excluded a proposed expert on safe design and operation of snow throwers. Though he was an "eminently qualified" mechanical engineer; he had no professional experience with respect to design, manufacture, operation, or safety of outdoor power equipment, did not conduct a review of the literature on snow throwers, and never owned a snow thrower or operated one outside the context of litigation. In doing so, the Court cited a host of cases in which an expert well-qualified in one area was properly excluded in another:

> *Oglesby,* 190 F.3d at 247 (testimony excluded of well-qualified mechanical engineer with no specialized experience or expertise in evaluating either automobile manufacturing processes or the strength of plastic automobile component parts); *Wilson,* 163 F.3d at 938 (recognized expert on causes of fires excluded as expert on motor vehicle collision accident reconstruction); *Ancho,* 157 F.3d at 517 (mechanical engineer with no experience designing or evaluating factories not an expert on industrial plant configuration); *Bogosian,* 104 F.3d at 477[3] (well qualified master auto mechanic not qualified as expert on car design …); *Trumps,* 969 F.Supp. at 252[4] (board certified safety professional and mechanical engineer not qualified to offer expert testimony regarding malfunction of electric grill; electrical engineering outside expert's field); *Silva,* 960 F.Supp. at 531[5] (civil engineer with public works experience could not testify about safety aspects of aircraft design about which he had no professional experience); *Diviero,* 919 F.Supp. at 1356–57[6] (engineer with over 30 years experience working with bias belted tires not qualified to testify that steel belted tire was unreasonably dangerous because two tires significantly different and he lacked chemical background to gauge compatibility of steel and rubber interface in tire).

In *Elswick v. Pikeville United Methodist Hosp. of Kentucky, Inc.*, 50 F. App'x 193, 194 (6th Cir. 2002), Sixth Circuit addressed the same legal issue before this Court in the opposite factual

---

[3] *Bogosian v. Mercedes–Benz of North America*, 104 F.3d 472, 476 (1st Cir.1997).
[4] *Trumps v. Toastmaster, Inc.*, 969 F.Supp. 247, 252 (S.D.N.Y.1997).
[5] *Silva v. American Airlines, Inc.*, 960 F.Supp. 528, 531 (D.P.R.1997).
[6] *Diviero v. Uniroyal Goodrich Tire Co.*, 919 F.Supp. 1353 (D.Ariz.1996), aff'd 114 F.3d 851 (9th Cir. 1997).

7

scenario: a healthcare administrator was disclosed to testify as to the cause of a patient's infection despite having no medical training. The Sixth Circuit affirmed the exclusion of testimony of the administrator, finding him unqualified by training, education, or experience to render such opinions.

Here, as in the cases above, Dr. Brown is not "qualified … by knowledge, skill, experience, training, or education," nor does he possess "scientific, technical, or other specialized knowledge [that would] help the trier of fact to understand the evidence or to determine a fact in issue." If "the key issue in deciding expertise is whether the expert has sufficient experience" (*Bush, supra*), there is no aspect of Dr. Brown's experience that renders him qualified to criticize any healthcare facility's policies, procedures, or practices. Dr. Brown has never been even remotely involved in the creation or revisions of a healthcare facility's policies. He has not been affiliated with a healthcare facility since 1985. His own practice of managing suicidal patients by writing a "stickie note" on their file and leaving it on his desk until he considers the matter resolved is questionable medicine, but more importantly is not reproducible at a facility-wide level. His testimony against the Deaconess Defendants would serve only to confuse the jury as to the issues in this case.

Plaintiff may argue that Dr. Brown's own practices are irrelevant because he is a solo practitioner whose practice has no relevance to the claims before the Court. To that, the Defendants agree. But that leaves us where we started: with Dr. Brown without any relevant experience, education, or training upon which to support his criticisms of the Deaconess Defendants, and he is therefore not qualified to render opinions against them.

Dr. Brown's qualifications are further fleshed out in the contemporaneously filed *Daubert* motion, but this Motion seeks to dismiss Plaintiff's claims for negligent hiring, training,

supervision, and retention against the Deaconess defendants, as Plaintiff has not produced any competent expert proof to sustain those claims.

## IV.    CONCLUSION

For the reasons stated above, the Defendants respectfully request that this Court grant its Motion for Partial Summary Judgment and dismiss Plaintiff's claim for negligent hiring, training, retention, and supervision.

PHILLIPS PARKER ORBERSON & ARNETT, PLC

/s/ Katherine T. Watts
KATHERINE T. WATTS
COLLEEN O. DAVIS
716 West Main Street, Suite 300
Louisville, Kentucky 40202
(502) 583-9900
kwatts@ppoalaw.com
cdavis@ppoalaw.com
cpotts@ppoalaw.com
dchurchman@ppoalaw.com
*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

It is hereby certified that a true and accurate copy of the foregoing was forwarded via email, this 30th day of October 2020 to:

William D. Nefzger, Esq.
BAHE COOK CANTLEY & NEFZGER, PLC
Marion E. Taylor Building, 6th Floor
317 South Fourth Street
Louisville, Kentucky 40202
will@bccnlaw.com
*Co-Counsel for Plaintiff*

Samuel J. Bach, Esq.
Bach & Armstrong LLC
312 First Street
P.O. Box 881
Henderson, Kentucky 42419
Sam@bacharmstrong.com
*Co-Counsel for Plaintiff*

/s/Katherine T. Watts
Katherine T. Watts